**JACKSON LEWIS P.C.**
Eileen K. Keefe (PA #93194)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
(267) 319-7802
eileen.keefe@jacksonlewis.com
*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAMERON SMITH,<br><br>        Plaintiff,<br><br>   v.<br><br>syncreon.US, Inc.,<br><br>        Defendant. | CIVIL ACTION NO: 1:22-cv-00744 |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iii

I.    INTRODUCTION ..................................................................1

II.   PROCEDURAL HISTORY ....................................................1

III.  STATEMENT OF FACTS.......................................................2

IV.   STANDARD OF REVIEW.....................................................2

V.    ARGUMENT.........................................................................4

    I.    DEFENDANT DID NOT DIRECTLY OR JOINTLY EMPLOY PLAINTIFF AND IS, THEREFORE, NOT LIABLE UNDER TITLE VII. ........................................................................4

       (i)    Payment of the Individual's Salary........................................6

       (ii)   Hiring and Firing ..................................................6

       (iii)  Control Over Plaintiff's Daily Employment Activities.........7

          (1) The Duration of the Relationship Between the Parties ....8

          (2) Whether the Hiring Party has the Right to Assign Additional Projects to the Hired Party.............................8

          (3) Method of Payment ..........................................9

          (4) Whether the Work is Part of the Regular Business of the Hiring Party ...................................................9

          (5) The Provision of Employee Benefits................................9

          (6) The Tax Treatment of the Hired Party ...........................10

II.    PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK
ENVIRONMENT CLAIM. ...........................................................11

A. Plaintiff Cannot Demonstrate That Pervasive or Severe
Hostility Permeated the Workplace and Altered the Conditions
of Employment.........................................................................13

B. Plaintiff Cannot Premise His Title VII Claim on Conduct He
Did Not Witness or Experience. ................................................21

C. Plaintiff Cannot Establish Respondeat Superior Liability....... 26

CONCLUSION ........................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdallah v. Allegheny Valley School*,
    2011 U.S. Dist. LEXIS 10667 (E.D. Pa. 2011) ....................................................5

*Am. Eagle Outfitters v. Lyle & Scott Ltd.*,
    584 F.3d 575 (3d Cir. 2009) ...................................................................................2

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................3

*Andreoli v. Gates*,
    482 F.3d 641 (3d Cir. 2007) .................................................................................27

*Burgess v. Dollar Tree Stores, Inc.*,
    642 F. App'x. 152 (3d Cir. 2016) ........................................................................12

*Carney v. Dexter Shoe Co.*,
    701 F. Supp. 1093 (D.N.J. Dec. 13, 1998) ............................................................7

*Castleberry v. STI Grp.*,
    863 F.3d 259 (3d Cir. 2017) .................................................................................14

*Caver v. City of Trenton*,
    420 F.3d 243 (3d Cir. 2005) ..........................................................................21, 24

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................3

*Conway v. A.I. Dupont Hosp. for Children*,
    Civ. Action No. 04-4862 (E.D. Pa. Jan. 6, 2009)..................................................3

*Covington v. Int'l Ass'n of Approved Basketball Officials*,
    710 F.3d 114 (3d Cir. 2013) ...................................................................................4

*Dawson v. Donahoe*,
    EEOC Request No. Appeal No. 0120114186 (February 8, 2012) .......................18

*Doe v. Abington Friends Sch.*,
    480 F.3d 252 (3d Cir. 2007) ................................................................4

*Faush v. Tuesday Morning Inc.*,
    808 F.3d 208 (3d Cir. 2015) ........................................................5, 6, 7

*Felder v. Penn Mfg. Indus.*,
    182 F. Supp. 3d 203 (E.D. Pa. 2016)..................................................22

*Gladden v. Ambler Healthcare Grp., LLC*,
    No. 21-4483, 2022 U.S. Dist. LEXIS 225737 (E.D. Pa. Dec. 15,
    2022) ...................................................................................................16

*Huston v. Procter & Gamble Paper Prods. Corp.*,
    568 F.3d 100 (3d Cir. 2009) ...............................................................27

*J.E. Mamiye & Sons, Inc. v. Fidelity Bank*,
    813 F.2d 610 (3d Cir. 1987) (Becker, J., concurring) ..........................3

*Junkins-Hopkins v. Johns Hopkins Hosp.*,
    No. 14-07080, 2015 U.S. Dist. LEXIS 67849 (E.D. Pa. May 26,
    2015) ...................................................................................................22

*Knabe v. Boury Corp.*,
    114 F.3d 407 (3d Cir. 1997) ..........................................................26, 27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).............................................................................3

*Meritor Savings Bank v, Vinson*,
    477 U.S. 57, 59 (1986)........................................................................14

*Moore v. Conn. Dep't of Corr.*,
    No. 3:19-cv-1063 (MPS), 2021 U.S. Dist. LEXIS 182963 (D.
    Conn. Sep. 24, 2021) ..........................................................................18

*Mufti v. Aarsand & Co.*,
    667 F. Supp.2d 535, 545 (W.D. Pa.2009) ..........................................15

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002).............................................................................14

*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318 (1992)..................................................................5, 6, 7, 10

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998) ..........................................................................11

*Patel v. Cigna Corp.*
2005 U.S. Dist. LEXIS 49967 (D.N.J. July 12, 2005) ................................6, 8, 9

*Peace-Wickham v. Walls*,
409 F. App'x 512 (3d Cir. 2010) ...........................................................26

*Ramara, Inc. v. Westfield Ins. Co.*,
814 F. 3d 660 (3d Cir. 2016) ...............................................................4

*Shaw v. Temple Univ.*,
357 F. Supp. 3d 461 (E.D. Pa. 2019)........................................................11

*Stocker v. Green, Tweed & Co., Inc.*,
No. 18-4503, 2020 U.S. Dist. LEXIS 137364 (E.D. Pa. Aug. 3,
2020) ...........................................................................13, 19, 20

*Tourtellotte v. Eli Lilly & Co.*,
No. 09-774, 2013 U.S. Dist. LEXIS 54392 (E.D. Pa. Apr. 15,
2013) ...........................................................................14

*Univ of Tex. Sw. Med. Ctr. v. Nassar*,
133 S. Ct. 2517 (2013).......................................................................4

*Woods v. Bentsen*,
889 F. Supp. 179 (E.D. Pa. 1985).............................................................21

*Wright v. Providence Care Ctr., LLC*,
822 F. App'x 85 (3d Cir. 2020) ..........................................................13

**Statutes**

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 2000e-
2(a)-(d) ........................................ 1, 4, 5, 6, 11, 14, 15, 17, 21, 25, 26, 27

## Other Authorities

Fed. R. Evid. 802 ................................................................................21

Fed. R. Evid. 803 ................................................................................24

Federal Rule of Civil Procedure 56(a) .......................................................2

## I.  <u>INTRODUCTION</u>

This is an employment hostile work environment case arising out of Plaintiff Cameron Smith's ("Plaintiff") employment with Strom Engineering, who is not a party to this action. Through his employment with Strom Engineering Plaintiff was provided a temporary work assignment with syncreon.US, Inc. ("syncreon" or "Defendant").  Plaintiff alleges he was subjected to a hostile work environment due to his race (African American), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  There is no genuine issue of material fact regarding Plaintiff's claim. First, Plaintiff cannot establish that he was ever an employee of syncreon entitled to hold syncreon liable under Title VII. Second, Plaintiff has failed to set forth the *prima facie* elements for a racially motivated hostile work environment claim because Plaintiff has not identified conduct motivated by his race that is sufficiently severe or pervasive. Third, Plaintiff cannot satisfy the elements to establish respondeat superior liability.

For the foregoing reasons, and those set forth in detail below, syncreon respectfully requests that its Motion for Summary Judgment be granted in its entirety and Plaintiff's Complaint be dismissed with prejudice.

## II. <u>PROCEDURAL HISTORY</u>

On May 24, 2022, Plaintiff filed a one-count Complaint against syncreon alleging a hostile work environment under Title VII.  ECF 5.  On July 25, 2022,

syncreon answered Plaintiff's Complaint. ECF No. 12.  On March 1, 2023, the parties stipulated to the amended caption to reflect the proper name of Defendant – syncreon.US, Inc.

### III.  STATEMENT OF FACTS

The relevant facts on which this Motion is based are set forth in the accompanying Statement of Undisputed Material Facts ("*SUMF*"), which will not be repeated at length here, but are referred to herein with citations in the argument portion of this brief.

### IV.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" only if "the evidence is such

2

that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The Supreme Court has advised that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the opposing party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted). Rather, the opposing party must "adduce evidence which, when considered in light of that party's burden at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J., concurring); *see also Conway v. A.I. Dupont Hosp. for Children*, Civ. Action No. 04-4862, at *12 (E.D. Pa. Jan. 6, 2009) (a party "cannot avert summary judgment with speculation or by resting on the

3

allegations in the pleadings, but rather must present competent evidence from which a jury could reasonably find in their favor").

In other words, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact."  *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (*citing Celotex*, 477 U.S. at 322-26).  In attempting to show a genuine dispute, "the non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F. 3d 660, 666 (3d Cir. 2016).

## V. **ARGUMENT**

### I. **DEFENDANT DID NOT DIRECTLY OR JOINTLY EMPLOY PLAINTIFF AND IS, THEREFORE, NOT LIABLE UNDER TITLE VII.**

Title VII forbids "status-based discrimination by employers, employment agencies, labor organizations, and training programs." *Univ of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2530 (2013) (citing 42 U.S.C. § 2000e-2(a)-(d)). Because Plaintiff accuses syncreon of violating Title VII, he must first prove the existence of an "employment relationship." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013). He cannot meet that burden because no material issues of fact supports the conclusion that Defendant syncreon employed

Plaintiff, whether as a direct or joint employer. As a result, he is not able to pursue the instant Title VII action.

Independent entities will be considered joint employers only if both "exert significant control over the same employees with evidence demonstrating that they share or co-determine those matters governing essential terms and conditions of employment." *Abdallah v. Allegheny Valley School*, 2011 U.S. Dist. LEXIS 10667 (E.D. Pa. 2011).  In order to establish that he had an employment relationship with syncreon, Plaintiff must show "the conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992).

In *Faush  v. Tuesday Morning Inc.*, 808 F.3d 208 (3d Cir. 2015), the Third Circuit held that the following three factors are the most relevant in determining employer/employee status: (i) who paid the individual's salary; (ii) who hired and fired the employee; and (iii) who had control over the employee's daily employment activities. Additionally, the Court in *Darden* provided a "non-exhaustive" list of factors to consider, including, but not limited to: (1) the duration of the relationship between the parties; (2) whether the hiring party has the right to assign additional projects to the hired party; (3) the method of payment; (4) whether the work is part of the regular business of the hiring party; (5) the

provision of employee benefits; and; (6) tax treatment of the hired party." *Darden* at 322-23.

If we apply the *Faush* analysis to the present matter, Plaintiff cannot establish an employer-employee relationship that gives rise to Title VII liability.

### (i)    Payment of the Individual's Salary

For this factor, Courts will look at how the worker was paid and the source of payment. *See Patel v. Cigna Corp.* 2005 U.S. Dist. LEXIS 49967, at *12-13 (D.N.J. July 12, 2005).  Here, Plaintiff concedes he was paid by his employer, Strom. *SUMF ¶ 6.* Further, Plaintiff's Strom personnel file and the handbook clarify that Strom, rather than syncreon, managed all matters relating to payday, payroll, insurance, paid time-off, etc. *SUMF ¶¶ 10, 11.*

### (ii)    Hiring and Firing

Plaintiff applied for employment with Strom, was hired by Strom, and signed an employment agreement with Strom, and in so doing acknowledged and agreed that he was a Strom employee. *SUMF ¶¶ 2-4, 10, 14, 15.* Additionally, Strom managed his employee background check and New Employee Orientation. *SUMF ¶ 10.* Strom also specifically reserved the right to terminate Plaintiff's employment. *Id.* Nothing in the record infers that syncreon had any role in hiring or firing Plaintiff from his employment with Strom.

6

*(iii) Control Over Plaintiff's Daily Employment Activities*

Here, all undisputed material facts demonstrate that only Strom materially controlled Plaintiff's employment. Per Plaintiff's testimony, his "bosses" were on-site Strom employees, who "ran everything." *SUMF ¶¶ 17, 18.* Strom's handbook expressly provides that Strom maintained sole authority to discipline Plaintiff during his employment. Strom also managed performance reviews and maintained his personnel file. SUMF ¶ 10. Consistent with this point, syncreon Operation Supervisor Joshua Yashinski expressly denied that he supervised Plaintiff. *SUMF ¶ 28.* Though Yashinski worked on site, nothing supports the claim that he had control over Plaintiff's job performance. *See, e.g.*, *Carney v. Dexter Shoe Co.*, 701 F. Supp. 1093, 1099 (D.N.J. Dec. 13, 1998) ("[T]he mere monitoring of an independent contractor does not constitute the exercise of control.").

In applying the *Faush* analysis to the present matter, Plaintiff cannot establish the existence of an employee-employer relationship. Nevertheless, the *Darden* Court offers additional factors for consideration when determining the existence of an employee-employer relationship. Unfortunately for Plaintiff, despite the fact that the *Darden* Court presents additional factors for consideration, and thus more opportunity to potentially establish a relationship, in the present proceedings the additional factors undoubtedly favor the Defendant:

7

*(1) The Duration of the Relationship Between the Parties*

It is undisputed that Plaintiff was assigned to work at a syncreon facility for only 60 days and that Plaintiff completed the assignment as planned. *SUMF ¶ 9, 47.* Plaintiff never worked at the syncreon facility again following the 60-day term. Accordingly, this factor weighs in syncreon's favor. (Courts in the Third Circuit have held that even a three-year tenure at a company does not support employee status. *Patel*, 2005 U.S. Dist. LEXIS 49967 at *11-12.)

*(2) Whether the Hiring Party has the Right to Assign Additional Projects to the Hired Party*

Strom certainly had the ability to place Plaintiff in additional assignments upon the completion of his 60-day assignment at the syncreon facility. syncreon, on the other hand, did not have authority to provide additional assignments as Plaintiff did not work for syncreon. If syncreon wanted Plaintiff to continue working for them outside of the 60-day contract with Strom, syncreon would have had to hire Plaintiff directly as an employee (which did not occur) or it would have had to negotiate a new contract with Strom, who would have been free to place a different temporary employee in Plaintiff's stead.

Aside from the above, syncreon did not have the authority to assign other work or projects to Plaintiff outside of the contract he entered with Strom, as it did

with it's own employees. Strom specifically preserved that right. *SUMF ¶ 14*. Plaintiff's work was controlled entirely by Strom and Strom supervisors. Accordingly, this factor also weighs against Plaintiff.

### (3) Method of Payment

As noted above, Plaintiff was paid entirely by Strom. His paychecks were issued by Strom and any other compensation offered to Plaintiff, if there was any, was offered through Strom. *SUMF ¶ 6*. This factor weighs heavily in favor of Defendant.

### (4) Whether the Work is Part of the Regular Business of the Hiring Party

Plaintiff was hired to work on the floor in a syncreon facility. It is in the regular business of Strom to place temporary workers into such assignments in a multitude of businesses, but Plaintiff was obviously performing work that was needed to serve syncreon. This factor is not determinative in the present case.

### (5) The Provision of Employee Benefits

No evidence infers that Plaintiff received employee benefits from syncreon and, therefore, this factor also weighs in favor of dismissal. *Id.* at *13 ("Employees typically receive employee benefits."). *SUMF ¶¶ 10-12*. Again, Plaintiff's personnel records from Strom and his testimony confirm that Strom, as his

employer, exclusively offered any employment benefits. *SUMF ¶ 10*. This factor weighs specifically in favor of Defendant.

### (6) *The Tax Treatment of the Hired Party*

Syncreon never issued Plaintiff tax documents, but Strom managed payroll deductions and tax consequences of Plaintiff's employment at Strom. *SUMF ¶ 6, 10.*  This factor weighs in favor of Defendant.

Finally, in keeping with the *Darden* court that agency principles are also applied to the establishment of an employer-employee relationship, one must also look at the intention of the Parties. The most apparent expression of the intention of the parties is set forth in both Plaintiff's Strom personnel file, including his many written acknowledgements of Strom agreements/policies, and own deposition testimony. He signed, near the onset of his assignment at syncreon on or about September 3, 2021, a "Project Assignment Agreement." *SUMF ¶ 6*. In that agreement, Plaintiff expressly acknowledged that, even if assigned to perform work at syncreon, he would *not* become a syncreon employee but would remain, instead, a Strom employee. *SUMF ¶ 14*. He further agreed that, if a customer representative attempted to change or modify duties, he had to notify the Strom Supervisor. *Id.* Moreover, Plaintiff expressed familiarity with the temporary contract worker process at his deposition, conceding several times that he

10

considered himself a Strom employee. *SUMF ¶¶ 2, 9.* syncreon supervisor Yashinski testified consistent on this point, expressing that he did not consider himself Plaintiff's supervisor. *SUMF ¶ 28.*

## II. PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK ENVIRONMENT CLAIM.

A hostile work environment claim arises when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78 (1998). Even if able to establish that syncreon was a joint employer, Plaintiff's hostile work environment claim fails as a matter of law based on his own concessions during discovery and all undisputed material facts.

To prove a hostile work environment, Plaintiff must demonstrate that he (1) suffered intentional discrimination on the basis of race, (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person in like circumstances; and (5) there is a basis for employer liability such as respondeat superior. *Shaw v. Temple Univ.*, 357 F. Supp. 3d 461, 477 (E.D. Pa. 2019) (quoting *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)). "Title VII is not

11

intended as a 'general civility code,' and requires that 'conduct must be extreme' to constitute the kind of 'change in the terms and conditions of employment' the statute was intended to target." *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x. 152, 155 (3d Cir. 2016) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Even when reviewing all facts in a light most favorable to Plaintiff, his own discovery testimony and admissions confirm that he cannot satisfy all elements of the action. First, as to the second required element, Plaintiff cannot demonstrate severe or pervasive discrimination where, amongst other times, he prepared a handwritten statement following an allegedly racially motivated dispute on September 16, 2021, in which he conceded that he did not personally have any concerns about the workplace until that singular exchange resulting in his coworker's termination on September 17, 2021. *SUMF* ¶ ¶ 35, 49, 51, 52, 55,-57, 59. Although alleged in his Complaint, Plaintiff cannot point to any evidence that the alleged perpetrator, employee Carl Conser ("Conser"), created a known hostile environment for him or anyone else prior to the incident resulting in Conser's immediate termination. *SUMF* ¶ ¶ 60, 79-83.

Second, as to the fifth element, Plaintiff cannot establish a basis for employer liability where he conceded that syncreon's response to the singular

known complaint about racial hostility yielded a prompt, adequate remedy, *ie.* Conser's immediate termination. In fact, Plaintiff's deposition testimony confirms his satisfaction with syncreon's response to his lone report of hostile work environment. *SUMF ¶¶ 48-50.* Plaintiff cannot cite to any evidence inferring that syncreon knew that Plaintiff perceived a hostile work environment but failed to take remedial action.

### A.   Plaintiff Cannot Demonstrate That Pervasive or Severe Hostility Permeated the Workplace and Altered the Conditions of Employment.

Plaintiff cannot meet his burden and cite a material issue of fact for trial that "the work environment was so permeated with discriminatory intimidation, ridicule, and insult," that was "sufficiently severe or pervasive so as to alter the conditions of [his] employment and create an abusive working environment." *Stocker v. Green, Tweed & Co., Inc.,* No. 18-4503, 2020 U.S. Dist. LEXIS 137364, at * 14 (E.D. Pa. Aug. 3, 2020) (internal citations omitted). The Supreme Court has held that a court should consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Wright v. Providence Care Ctr., LLC,* 822 F. App'x 85, 95 (3d Cir. 2020) (quoting *Harris v. Forklift Sys., Inc.,* 126 L.Ed 2d 295

13

(1993)). Hostile work environment claims are "based on the cumulative effect of individual acts" and "cannot be said to occur on any particular day." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).    Indeed, the Supreme Court addressed the "severe or pervasive" standard in *Meritor Savings Bank v. Vinson*, and explicitly clarified that employees who are called a racial, ethnic or sexual epithet once or twice, although it is undoubtedly offensive, do not experience conduct sufficiently severe or pervasive enough to violate Title VII. 477 U.S. 57, 59 (1986).

The question of whether conduct is sufficiently "severe or pervasive" is "context-specific," as there may be unique scenarios where a singular event constitutes a hostile work environment when not adequately addressed by the employer. *See Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (holding that supervisor's use of the "n-word" in front of the plaintiffs could create a cognizable hostile work environment claim if evidence showed that the defendant-employer failed to take adequate remedial action). However, for purposes of summary judgment dismissal rather than at the pleading phase, courts in the Third Circuit have recognized that confirmed offhand comments and isolated incidents do not create a genuine issue of material fact on the element of severity but can, instead, be adjudicated at the summary judgment phase. *See Tourtellotte v. Eli Lilly*

14

& Co., No. 09-774, 2013 U.S. Dist. LEXIS 54392, at *8 (E.D. Pa. Apr. 15, 2013) (stating that racial comments that are "sporadic or part of casual conversations" do not violate Title VII") (internal citation omitted); *Mufti v. Aarsand & Co.*, Inc., 667 F. Supp.2d 535, 545 (W.D. Pa.2009) (*citing Abramson v. William Paterson College of New Jersey*, 260 F.3d 265 (3d Cir. 2001))( "[O]ffhanded comments and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim.")

In the instant case, Plaintiff testified consistent with his handwritten statement in representing that, prior to and after the lynching comment of September 16th, he never had **any** hostile encounters at the syncreon facility (emphasis added). He testified that the "singular instance where [he] experienced a hostile work environment" was Conser's lynching comment of September 16th. *SUMF ¶ 52.* He also testified that his written statement addresses his only altercation or threat from Mr. Conser. *SUMF ¶ 51.* (Q: Do you recall being asked in those Interrogatories if you had personally observed or personally experienced any prior altercation or threats from Mr. Conser other than the one that you write about in your statement? A: No, never did.")

In considering the totality of the circumstances in the light most favorable to Plaintiff, he cannot identify evidence suggesting that the workplace was permeated

with discriminatory intimidation, ridicule, and insult. By his own admission, the only alleged comment that evinces intentional discrimination on the basis of Plaintiff's race is Conser's September 16th comment that resulted in termination. *SUMF ¶ ¶  35, 49, 51, 52, 55-57, 59.* This singular comment is not sufficiently severe or pervasive to create an issue of fact for trial as to Plaintiff's hostile work environment claim, particularly where Plaintiff admits the racial animus stopped as soon as he brought it to syncreon's attention and syncreon terminated Conser. *See Gladden v. Ambler Healthcare Grp., LLC*, No. 21-4483, 2022 U.S. Dist. LEXIS 225737, at * 22 (E.D. Pa. Dec. 15, 2022) (granting summary judgment on the plaintiff's hostile work environment claim when plaintiff's coworker used racial slurs on three occasions and the comments stopped as soon as the plaintiff brought it to his employer's attention).

Plaintiff may unsuccessfully attempt to salvage his hostile work environment because, during the singular week that he and Conser worked the same shifts, he allegedly saw an image of a Confederate flag on Conser's personal cell phone. *SUMF ¶ ¶  70, 74.* Although he never expressed any concerns about the phone to Conser,   management at syncreon, management at Strom, or even the Equal Employment Opportunity Commission, Plaintiff now alleges that he found the image offensive. *SUMF ¶¶* 71, 76, 79.

16

Even if true, his argument fails to establish Title VII liability because (1) Plaintiff cannot cite to any evidence that he or anyone else ever alerted syncreon management about concerns, and (2) Plaintiff's own admissions belie the claim that seeing the image actually altered the circumstances of his employment.

No evidence of record supports the allegation that syncreon management knew of the cell phone image; Plaintiff relies on unsubstantiated assumptions without identifying any actual, competent facts of record to support his claim. *SUMF ¶¶ 68, 69, 72.* In fact, Conser's supervisor testified that did not personally view the Confederate flag on Conser's phone case and, moreover, personal cell phones are already prohibited from the production floor as a matter of policy. *SUMF ¶¶ 72, 75.* Conser himself also states that he never received complaints from coworkers regarding the cell phone image, nor did he ever learn of anyone having complained to management about the phone. *SUMF ¶¶ 82, 84.* Indeed, if Conser was intent on following the rules, he would have averted the phone from management even if displaying it other times as alleged. Conser admittedly lacks actual knowledge of whomever viewed the image on his screensaver. *SUMF ¶ 81.* In this regard, the instant matter is wholly distinguishable from caselaw or EEOC holdings finding that the appearance of a Confederate flag in the workplace could establish a legitimate issue of fact for a hostile work environment claim. *See*

17

*Moore v. Conn. Dep't of Corr.*, No. 3:19-cv-1063 (MPS), 2021 U.S. Dist. LEXIS 182963, *29 (D. Conn. Sep. 24, 2021)  (finding evidence to support a hostile work environment claim because the record demonstrated that plaintiff complained about the presence of a Confederate flag consistently displayed in a workplace location, but the employer failed to take adequate remedial action);  *Dawson v. Donahoe*, EEOC Request No. Appeal No. 0120114186 (February 8, 2012)(finding a hostile work environment where management received complaints about Confederate flag t-shirts worn at work, but they failed to take remedial action for two months). Moreover, Conser's declaration, his employment record, and the declaration of the syncreon human resources generalist Amandah Getting from the York location confirm that syncreon lacked notice that Conser's phone depicted an image deemed hostile. *SUMF  ¶¶  68, 69, 73, 80, 82.* Unlike the cited cases, Plaintiff never reported that he found the phone display hostile. Moreover, the record is void of any evidence inferring that anyone from syncreon management even had knowledge of the image, which logically aligns with the testimony that workers were not permitted to have their phones on the production floor. *SUMF ¶ 75.*

Next, Plaintiff cannot demonstrate that seeing the phone display actually interfered with his work performance, or altered the conditions of his employment,

18

even if able to demonstrate that he found the image hostile. *See Stocker,* 2020 U.S. Dist. LEXIS 137364, at * 14. The record lacks any evidence suggesting that Plaintiff ever modified his performance on account of Conser's phone display. He cannot cite to any evidence demonstrating that the flag's intermittent display at various points during the course of a singular week was "sufficiently severe or pervasive so as to alter the conditions of [his] employment and create an abusive working environment." *Id*.

Per his testimony, Plaintiff never even deemed it necessary to report or complain about the flag displayed on Conser's personal phone, even while already discussing that he found Conser's lynching comment hostile and based on race. Not only did Plaintiff neglect to mention the phone at that point, but during the investigation he even volunteered that the lynching comment was his **only** concern in the workplace: "I never had a problem or issue inside the facility." *SUMF ¶¶ 25, 77.*

Similarly, during his deposition, Plaintiff neglected to mention the Confederate flag phone display until ultimately asked about it, at which point he then acknowledged that he never raised a concern or complaint about the phone through syncreon or his employer, Strom. *SUMF ¶¶ 71, 77, 79.* He also neglected to address this alleged concern when he filed his charge with the Equal

19

Employment Opportunity Commission. *SUMF ¶ 76.* In fact, regarding Conser, Plaintiff even testified that "before [September 16th], we never had a problem." *SUMF ¶ 53.* He added:

> Q: Had you ever really spoken with [Conser] prior to this encounter [on September 16th]?
>
> A Oh, we worked side by side.
>
> Q: Okay. And in that time though, [September 16th] is the incident [where] you perceived hostility?
>
> A: Yes, ma'am.

*SUMF ¶ 54.* When asked if Conser "created an aggressive environment from [his] perspective" prior to September 16th, Plaintiff answered "not really noticeably…" *SUMF ¶55.* Plaintiff's attempt to now cite the allegedly intermittent viewings of the cell phone image as "altering the conditions of his employment" belies his own earlier statements and representations. *See Stocker* 2020 U.S. Dist. LEXIS 137364, at * 14.

Plaintiff also conceded that he had no premise to conclude that Conser's statements like "these people coming here" related to race: Plaintiff only inferred, without any basis, that said statement related to race but then agreed that Conser acknowledged it equally likely that the comment could refer to temporary contractors, generally. *SUMF ¶ 58.*

20

As Plaintiff cannot establish that syncreon had knowledge of allegedly severe or pervasive conduct that was motivated by his race, or that allegedly hostile actions interfered with or altered his employment, syncreon is entitled to judgement in its favor as to Plaintiff's hostile work environment claim under Title VII.

**B.**     **Plaintiff Cannot Premise His Title VII Claim on Conduct He Did Not Witness or Experience.**

To meet his burden and establish that syncreon had a "pervasive" hostile work environment claim, Plaintiff relies in part on alleged hearsay statements and experiences of unidentified coworkers; he will likely cite an account that Conser made statements "similar" to the lynching comment that Conser allegedly intended as a joke.  *SUMF ¶¶ 61-66.* Title VII law is well established: plaintiffs can only recover for their own workplace experiences, and not the experiences of others. *See Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005) ("[plaintiff] cannot meet the first element of the hostile work environment claim under Title VII [ ] - causation - solely by pointing to comments that were directed at other individuals.");  *Woods v. Bentsen*, 889 F. Supp. 179, 184 (E.D. Pa. 1985) (holding that a plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present **competent** evidence from which a jury could reasonably find in his favor.)(emphasis added); *see also* Fed. R.

21

Evid. 802. Indeed, "[r]acist comments solely directed toward others and made outside of Plaintiff's presence cannot alone prove the first element of a hostile work environment claim." *Felder v. Penn Mfg. Indus.*, 182 F. Supp. 3d 203, 209 (E.D. Pa. 2016); *see also Junkins-Hopkins v. Johns Hopkins Hosp.*, No. 14-07080, 2015 U.S. Dist. LEXIS 67849, at *10 (E.D. Pa. May 26, 2015) ("[A] plaintiff must be contemporaneously aware that their work environment is hostile or abusive."). Plaintiff may not base his hostile work environment claim on other workers' alleged perceptions.

In his Complaint, Plaintiff alleges without evidentiary support found in the record following discovery, that Conser was a "frequent source of problems and frequently expressed racial hatred in the workplace." Complaint at para. 21. Plaintiff concedes that he was not actually present for any hostile conduct by Conser or anyone else, but-for the incident of September 16th that resulted in syncreon terminating Conser's employment. Complaint at ¶ 21-22; *SUMF ¶ 61.* ("Q: Now you spoke a moment ago about a perception that Conser had been involved in something similar in the past. Is that right? A: From what I heard. Nothing that our experience was saying personally. Q: So, it's sort of just whispered down the lane type stuff? Q: Yes, ma'am."); *SUMF* ¶ 66. ("Q: Now in your complaint you talked about some events from early 2021. But as I understand

your testimony, you were actually not even onsite, correct, in early 2021 at the York location? A: Yes….Q: So, you weren't even there for the beginning of 2021, the first half of 2021? A: No, ma'am.") Plaintiff even testified that the incident of September 17, 2021, was the "singular instance" where he, personally, experienced a hostile work environment. *SUMF ¶ 52*. Similarly, in his answers to Interrogatories, he conceded that he did not personally observe or experience any prior altercation or threats from Conser other than the one he addresses in his handwritten statement on September 16, 2021. *SUMF ¶ 51*. Accordingly, by his own admission and based on the case record, Plaintiff lacks any evidence to support the allegations in his Complaint relating to prior hostile conduct attributed, through "whisper down the lane," to Conser.

Plaintiff even conceded that conduct he did not personally experience is **not** part of his claim.

> Q: But you talked earlier, and we don't know the gentleman's name, but you talked about another African American talking to you about his perception of a hostile work environment. But you're not talking about your experience. Correct?
>
> A: No.
>
> Q: So, you can only really speak about what he perceived to be a hostile work environment affecting him. Correct?
>
> A: Yes.

Q: So, that doesn't really relate to your personal claim. Correct?

A: No. He was just giving me a warning, a heads up.

*SUMF ¶ 62.*

Plaintiff's claim also fails to overcome the fact that, even after discovery, he cannot identify the sources of Conser related rumors, or offer any evidence to overcome hearsay rules and corroborate the claims relating to events prior to his employment and otherwise outside of his purview. *Id.*; *see* Fed. R. Evid. 803. Defendant syncreon, by contrast, presents uncontroverted evidence that Conser's disciplinary record lacks any mention of prior racial hostility and, moreover, syncreon human resources has no information to suggest that Conser was the subject of prior race-related complaints during his career there. *SUMF ¶¶ 67-69, 83.*

The Third Circuit's analysis and holding in *Caver* proves instructive, as there the Court addressed an analogous scenario involving alleged hostility directed to individuals other than plaintiff. In *Carver,* the plaintiff, an African American police officer, testified that he overheard other officers, including two of his superiors, use hurtful racial slurs to African American prisoners and detainees, and a supervisor stated that "the chief said it's okay to be in the KKK". 420 F. 3d at 249. The plaintiff never claimed anyone directed racist comments at him,

24

personally. *Id.* In affirming the judgment in favor of the city on the hostile work environment claim, the Court noted that a plaintiff cannot meet the first element of the hostile work environment claim under Title VII by pointing to comments that were directed at other individuals. *Id.* at 263. "[The plaintiff] cannot show that the comments would not have been uttered or written but for *his* race if [the plaintiff] was neither on the receiving end nor the subject of any comments" (emphasis in original). *Id.*

Defendant anticipates Plaintiff citing the Declaration of Carl Conser to explain that Conser acknowledged making the lynching comment, allegedly intended as a joke, and that he made similar statements while at syncreon. *SUMF ¶ 37.* As confirmed by Conser's Supplemental Declaration, Conser intended that his reference to "similar statements" relate to statements made and/or intended in a joking manner directed to coworkers, and did *not* relate to race, racism, or racial hostility as Plaintiff may attempt to argue. *SUMF ¶ 83.* Plaintiff also testified that employees joked in the syncreon workplace. *SUMF ¶ 38.*

Moreover, Conser's statement has no consequence on the instant motion because Plaintiff can only recover for what *he experienced* and, here, he unequivocally concedes that he did not, personally, ever witness Conser make any racially insensitive, racist, or hostile remarks prior to the lynching comment on

September 16th. *SUMF ¶ ¶ 55, 59.* Where Plaintiff worked only one week with Conser, and where his testimony regarding Conser's allegedly racist reputation relies only on accounts of *other* (often unidentified) workers, Plaintiff cannot cite those alleged occurrences to support his hostile work environment claim as a matter of law. *SUMF ¶ ¶ 61-66.*

## C. <u>Plaintiff Cannot Establish Respondeat Superior Liability.</u>

Where Plaintiff concedes that syncreon responded promptly and adequately following the first and only evidence of a hostile work environment relating to his tenure as a temporary worker at syncreon, the hostile work environment claim fails as a matter of law. Indeed, syncreon's undisputedly effective and timely response to Plaintiff's singular report of hostility preclude recovery. Plaintiff cannot assert a *prima facie* case even if this Court deems the isolated comment about lynching and/or Confederate flag viewing sufficiently "severe" for purposes of Title VII liability. *See Knabe v. Boury Corp.*, 114 F.3d 407, 413 (3d Cir. 1997) (dismissing a Title VII hostile work environment claim where the defendant-employer took adequate remedial action "reasonably calculated to prevent further harassment"); *Peace-Wickham v. Walls*, 409 F. App'x 512, 518-22 (3d Cir. 2010)(affirming a summary judgment award dismissing a hostile work environment claim because remedial measures proved adequate to address the underlying concern).

26

"When the hostile work environment is created by a victim's non-supervisory coworkers, the employer is not automatically liable. Rather, employer liability for co-worker harassment exists **<u>only</u>** if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). Moreover, "[a]n employer's remedial action is adequate 'if it is reasonably calculated to prevent further harassment.'" *Huston*, 568 F.3d at 110 (quoting *Knabe v. Boury Corp.*, 114 F.3d 407, 412 n. 8 (3d Cir.1997)). As the Third Circuit has explained, "a remedial action that effectively stops the harassment will be deemed adequate as a matter of law." *Knabe*, 114 F.3d at 412 n. 8, 413; *see also Andreoli v. Gates,* 482 F.3d 641, 644 (3d Cir. 2007) (same). Indeed, an employer avoids Title VII liability if it takes reasonable steps likely to stop the harassment. *Id.* at 414. Here, the undisputed record confirms that syncreon met its obligations.

First, syncreon maintained employee policies to educate and prevent harassment. *SUMF ¶ 24-27.* Also, Plaintiff, as a temporary worker on site through his employment with Strom, admittedly knew of mechanisms to report any hostility or racial animus in the workplace. *SUMF ¶¶ 71, 78.* He testified:

Q: Did you avail yourself of some of the methods to complain about the Confederate flag phone case?

A: No, I didn't complain at all.

Q: Okay. But you understand that based on your experience with the lynching comment that there were mechanisms to complain?

A: Yes, ma'am.

*SUMF ¶¶ 77, 78* ("Q: And if you experienced any type of harassment or hostile work environment as a Strom employee, did you understand there was a mechanism to report that? A: Yes, ma'am.") Indeed, Plaintiff's own conduct and syncreon's response is the best evidence that Plaintiff knew how to report and syncreon knew how to react: Plaintiff informed Conser's supervisor of the lynching comment; the supervisor immediately directed Plaintiff, Conser and others to write a statement before leaving the premises for the day; syncreon evaluated and substantiated the allegation; and syncreon terminated Conser's employment the following day. *SUMF ¶¶ 33-44.*

Plaintiff never even addressed any additional Conser concerns when reporting the September 16th incident as part of the syncreon investigation. *SUMF ¶¶ 35, 71.* By never availing himself of the options to report, Plaintiff rendered syncreon incapable of knowing that he found the phone image offensive or hostile, and he precluded syncreon from taking related action.  In fact, Plaintiff provides

only supposition that syncreon supervisors personally saw Conser's cell phone screen, and then he assumes that those supervisors share or otherwise knew his personal perspective regarding the flag even where he never shared that information. *SUMF ¶ 4.* Because Plaintiff admittedly failed to discuss his apparent concerns about the flag with supervisors, human resources representatives, or others in management, he cannot now criticize syncreon for not addressing his late-cited complaint.

Undisputed record evidence also confirms that the remedy that followed the first and only report of Conser's hostility, *ie.* terminating Conser's employment, adequately rectified the known concern. At deposition, Plaintiff even testified that he deemed syncreon's timely investigation and Conser's termination adequate to end reported harassment or racial hostility at syncreon. *SUMF ¶¶ 48, 50, 52.* Plaintiff further testified that, other than on September 16th, he had no other race related problems at syncreon. *SUMF ¶ 54.*

## CONCLUSION

For all of the forgoing reasons, Defendant is entitled to summary judgment on each of Plaintiff's claims.

Respectfully submitted,

**JACKSON LEWIS P.C.**

_/s/ Eileen K. Keefe_
Eileen K. Keefe (PA #93194)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
(267) 319-7802
eileen.keefe@jacksonlewis.com
eve.keller@jacksonlewis.com
_Attorneys for Defendant_

Dated: April 28, 2023

## <u>CERTIFICATION PER LOCAL RULE 7.8</u>

I, Eileen Keefe, counsel for moving party, hereby certify that this Memorandum of Law complies with Local Rule 7.8 and This Court's Order of April 27, 2023 (ECF doc. 29) because it does not exceed 8,000 words.

Respectfully submitted,

**JACKSON LEWIS P.C.**

*/s/ Eileen K. Keefe*
Eileen K. Keefe (PA #93194)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
(267) 319-7802
eileen.keefe@jacksonlewis.com
eve.keller@jacksonlewis.com
*Attorneys for Defendant*

Dated: <u>April 28, 2023</u>

4876-2569-1479, v. 7

31