IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAMERON SMITH, <br><br> Plaintiff, <br><br> v. <br><br> syncreon.US, Inc., <br><br> Defendant. | CIVIL ACTION NO: 1:22-cv-00744 |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant syncreon.US, Inc. ("syncreon"), by and through its undersigned attorneys and pursuant to Federal Rule of Civil Procedure 56, respectfully submits this Reply Brief to address select arguments in Plaintiff's Opposition Brief relative to the pending Motion for Summary Judgment.

As a threshold matter, syncreon objects to Plaintiff's failure to comply with Federal Rule of Civil Procedure 56(c) when presenting unsupported denials of Movant's Statements of Undisputed Facts (SUMF) and, most importantly, when presenting his "factual statement" within the opposition brief rather than in a separate Counter Statement of Facts. The vast majority of those asserted "facts" lack any citation to the record. Indeed, per Rule 56(e)(3), This Court should grant

summary judgment based on Plaintiff's failure to support assertions or denials of fact in accordance with the governing rules.

Plaintiff's wholesale failure to cite properly and competently to the record most assuredly stems from his inability to find support in the record. Often Plaintiff asserts "facts" that, on evaluation, directly conflict with his own testimony as well as statements of syncreon's deponent and Human Resource's department declarant. Plaintiff may now regret the factual concessions he made during deposition, but that does not alter This Court's ability to use all undisputed record evidence to evaluate the elements of the claim and ultimately award summary judgment.

First, Plaintiff fails to identify any controlling facts to support a claim for joint employment liability. Indeed, like syncreon, he cites the considerations outlined in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992) and *Faush v. Tuesday Morning Inc.*, 808 F.3d 208 (3d Cir. 2015), but he then ignores his testimony on the topics when presenting uncited, and often uncitable, factual claims.

For example, on page 10, Plaintiff attempts to liken his assignment at syncreon to that of the plaintiff in *Faush*. Plaintiff does not, and cannot, find support in the record to make the same claim regarding supervision. Plaintiff testified that, at syncreon, he was actually supervised by another Strom employee. SUMF ¶¶ 7, 8, 17, 18. The mere fact that a syncreon manager, John Yashinski ("Yashinski"), had

ultimate responsibility for the section of the warehouse where Plaintiff worked during his 60-day assignment does nothing to interrupt the line of authority. *See Carney v. Dexter Shoe Co.,* 701 F. Supp. 1093, 1099 (D.N.J. Dec. 13, 1998)("[T]he mere monitoring of an independent contractor does not constitute the exercise of control") Indeed, even when conducting an investigation regarding the comment of Conser, syncreon involved Strom leadership because that chain of command governed Plaintiff's assignment. SUMF ¶ 21, 41.

Plaintiff claims that syncreon had control over "essential aspects of employee life," but again fails to rely on more than his own conclusory statements for support. Plaintiff testified that "the bosses" in the workplace worked for Strom, they "ran everything," and he would go to Strom employees if he had questions or concerns in the workplace. SUMF ¶¶ 17, 18. Moreover, the undisputed record demonstrates that Strom had ultimate authority over any variation to the assigned projects of Strom employees. SUMF ¶ 14.

Plaintiff addresses "the most important factor" in the joint employment analysis, *ie.* the right to control the "means and manner" of performance, but again he fails to cite the underlying facts that relate to his workplace experience. On this point, Plaintiff at least acknowledges the record, however he asks This Court to reject it simply because he doesn't like the answer given by Yashinski at deposition: Yashinski explicitly testified that he supervised Carl Conser ("Conser"), but not

3

Plaintiff, at syncreon. SUMF ¶ 7. Having no evidence to refute, Plaintiff simply challenges Yashinski's credibility. Such an argument may preclude summary judgment if the Pennsylvania Supreme Court holding in *Nanty-Glo v. American Surety Co.*, 163 A. 523 (Pa. 1932) governed, but This Court is not so constrained. *See, Barbato v. Progressive Specialty Ins. Co.*, No. 3:21-732, 2023 U.S. Dist. LEXIS 33411, at *2 n.2 (M.D. Pa. Feb. 28, 2023)(rejecting *Nanty-Glo*'s limit on testimonial evidence when reviewing a summary judgment under Rule 56). In the Third Circuit, Courts may rely upon the moving party's own testimonial evidence when reaching a decision on a summary judgment motion. *Seeley ex rel. Shepard v. Derr*, No. 4:12-CV-917, 2013 U.S. Dist. LEXIS 99506, 2013 WL 3776424, at *3 (M.D. Pa. July 17, 2013) citing *Waskovich v. Morgano*, 2 F.3d 1292 (3d Cir. 1993).  In fact, when resolving a motion for summary judgment, federal courts "can, and must, consider what the undisputed testimonial evidence shows." *Id.*

    Here, there is no premise to reject Yashinski's testimony - particularly where it aligns completely with Plaintiff's own testimony on the same subject. When Yashinski testified about supervision, Plaintiff accuses him of "grip[ping] the company line." Although Plaintiff testified identically about supervision, Plaintiff omitted all such references from his brief. SUMF ¶¶ 17, 18. This Court can indeed consider Strom supervision, and other key *Darden* and *Faush* factors, as undisputed fact given the lack of any record evidence to demonstrate material factual disputes.

Second, as to the Title VII claim, Plaintiff again ignores his own testimonial concessions and attempts to avoid the legal and factual realities that preclude his recovery. He cannot demonstrate that, during the single week where his shift overlapped with that of Conser, he endured a severe *or* pervasive hostile work environment per Title VII. Plaintiff testified consistent with his real-time handwritten statement of September 17th: Conser's lynching comment was the *only* time he personally experienced racial hostility in the syncreon workplace that impacted his ability to perform his assignment. SUMF ¶¶ 35, 51, 52-57, 66. All hostility ended with Conser's swift termination. SUMF ¶¶ 48, 50.

Plaintiff argues that This Court may consider alleged, but unsupported, instances of racial hostility predating his assignment to determine "whether facially neutral conduct on the part of defendant was actually based on race." *See* Plaintiff' Brief, page 20, citing *Felder v. Penn Mfg. Indus.*, 182 F.Supp.3d. 203, 209 (E.D.Pa. 2016). On this point, he promotes his selective interpretation of Conser making "similar" comments to mean racist comments, even where Conser clarified his intent to reference "similar comments" as meaning other intended jokes (rather than race-based remarks) and Plaintiff confirmed that joking was commonplace. SUMF ¶ 35, 38, 38. Even if somehow able to overcome the case record and demonstrate that Conser made race-based comments in the past, said comments do not relate to the instant case because Plaintiff admits that he never personally heard the comments,

5

nor has he alleged that "neutral" conduct actually related to race. SUMF ¶¶ 49, 52-57, 59-62. Plaintiff quotes caselaw accurately but fails to explain any nexus to the claims in his case.

In short, Plaintiff does not allege that facially neutral conduct should be interpreted now as hostile; he explicitly testified that he found one singular statement hostile, and that alerting syncreon yielded a satisfactory remedial response. SUMF ¶ 50. Accordingly, Plaintiff's attempt to discount Conser's declaration and/or rely on the hearsay accounts of often unidentified workers whose assignments predated Plaintiff's syncreon arrival lack any nexus to this case. Plaintiff even conceded this point explicitly at deposition. SUMF ¶¶ 61, 62 ("Q: So, you can only really speak to what he perceived to be a hostile work environment affecting him, correct? A: Yes, Q: So that doesn't relate to your personal claim, Correct? A: No. He was just giving me a warning a heads up."), 64.

To the extent Plaintiff claims that viewing an imagine of a Confederate flag on Conser's personal cell phone screen supports his claim, he again fails to demonstrate that any viewings within the course of the singular week constitute severe or pervasive hostility. *See Meritor Savings Bank v. Vinson,* 477 UI.S. 57, 59 (1986)(explaining that employees who are called a racial epithet once or twice, although undoubtedly offended, do not experience conduct sufficient to demonstrate severe or pervasive violations of Title VII.) While Plaintiff says the phone

6

background was visible to all and "constantly out," there is nothing on the record to show that it was brandished or that it created a pervasive hostile environment that impacted Plaintiff's work performance. Plaintiff discusses only that the phone was seen, not its effect on the work environment or his ability to perform his job functions. In fact, his real-time handwritten statement infers that he worked near Conser previously without concerns: "*I have never had a problem or issue inside the facility*, I do my job, I'm here everyday." SUMF ¶ 35 (emphasis added).

Consider, too, undisputed evidence revealing that Plaintiff never alerted syncreon of his alleged concerns regarding the image, nor is there any record evidence that any syncreon leadership was aware of concerns about the phone. Plaintiff ignores his own testimony, acknowledging that he knew of forums to voice hostility concerns but never utilized them to address the phone even when already discussing Conser's workplace conduct relative to the lynching comment. SUMF ¶¶ 13, 16, 71 78. As briefed, he did not even include this in his EEOC charge. SUMF ¶ 76. The fact that he never complained not only relates to respondeat superior liability but also supports the conclusion that the phone display was not pervasive or severe enough to create a hostile environment per Title VII.

Undisputed record evidence demonstrates that, prior to September 2021, syncreon had *never* received complaints regarding Conser, or his phone, in the context of race relations. SUMF ¶ 67-73, 80, 84.  Nothing in the underlying record

7

refutes the evidence that, upon learning for the first time that Conser engaged in conduct deemed violative of syncreon's anti-harassment policies, syncreon took prompt remedial action by terminating Conser's employment. SUMF ¶¶ 48, 50, 80, 84. Even if Plaintiff viewed Conser's phone image and perceived it as hostile, he cannot support his speculative theory that syncreon supervisors knew that he (or other workers) deemed the image on Conser's phone hostile. SUMF ¶¶ 68, 69, 71-73, 82, 84.  Once again, syncreon has presented competent evidence in the form of testimony and a sworn declaration related to the subject. Plaintiff, lacking any valid basis to refute, asks This Court to reject that evidence only because it undercuts his case. He ignores that, in federal court, "a motion for summary judgment can be granted based on uncontradicted self-serving testimony of a moving party's witness." *Hughes v. Badaracco-Apolito*, No. 3:14-CV-1839, 2016 U.S. Dist. LEXIS 24292, (M.D. Pa. Feb. 29, 2016). The uncontradicted evidence in this case confirms that syncreon leadership had never received hostility complaints relating to Conser's cell phone prior to the instant lawsuit.

    Finally, Defendant notes that Plaintiff devotes a substantial portion of his Brief to espousing the historical horrors of lynching and addressing the rationale for protections such as those afforded in Title VII. On these points, syncreon agrees as best evidenced by the undisputed fact that syncreon enforced its anti-harassment policies and terminated Conser's employment only hours after substantiating an

8

alleged policy violation. SUMF ¶¶ 43, 44, 48, 50. Defendant maintains that its prompt and effective response wholly aligns with the objective of Title VII. Regarding syncreon's response, Plaintiff even conceded: "I don't know what else they could do." SUMF ¶ 50.

WHEREFORE, for the reasons set forth in Defendant's Motion for Summary Judgment and supporting filings, Defendant respectfully requests judgment in its favor and against Plaintiff.

Respectfully submitted,

**JACKSON LEWIS P.C.**

*/s/ Eileen K. Keefe*
Eileen K. Keefe (PA #93194)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA  19102
eileen.keefe@jacksonlewis.com
*Attorneys for Defendant*

Dated: June 2, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing ***DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT*** and this ***CERTIFICATE OF SERVICE*** were served via the Court's ECF System, this 2nd day of June, 2023, upon Counsel of record.

**JACKSON LEWIS P.C.**

*/s/ Eileen K. Keefe*
Eileen Keefe (PA# 93194)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
T: (267) 319-7802
F: (215) 399-2249
eileen.keefe@jacksonlewis.com

*Attorney for Defendant*

4877-9011-4919, v. 1